```
                                                      U.S. DISTRICT COURT
                                                     DISTRICT OF VERMONT
                                                             FILED
```

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2025 AUG 11  PM 3: 47

CLERK

BY /s/ IAN
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:24-cr-00121-1 |
| ) | |
| CHRISTOPHER RANTANEN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND
DENYING DEFENDANT'S MOTION FOR A *FRANKS* HEARING**
(Doc. 23)

Defendant Christopher Rantanen is charged in a two-count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and with being an unlawful user of controlled substances in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). *See* Doc. 1. Pending before the court is Defendant's February 28, 2025 motion to suppress evidence and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. 23.) The government opposed Defendant's motion on March 31, 2025. (Doc. 27.) Defendant filed a supplemental memorandum in support of his motion on July 9, 2025, (Doc. 33), which the government opposed on July 10, 2025. (Doc. 34.) On July 10, 2025, the court heard oral arguments and held an evidentiary hearing after which the parties submitted supplemental briefing on July 24, 2025. (Docs. 39, 40.)

Defendant is represented by Lisa B. Shelkrot, Esq. Assistant United States Attorney Michelle M. Arra represents the government.

I.    **Findings of Fact.**

The court makes the following findings of fact by a preponderance of the evidence based on the parties' briefing and exhibits, as well as the evidence admitted during the July 10, 2025 evidentiary hearing which includes two videotapes of the encounter.[1]

---

[1] *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (finding court of appeals should have relied on

### A. Officer Soulia's Training and Experience.

In September 2024, Officer David Soulia was a Part-Time Patrol Officer at the Pittsford Police Department ("PPD"), where he had previously worked from March 2020 until November 2022. Prior to his employment there, he was employed at the Rutland County Sheriff's Department ("RCSD") from November 2022 until the end of January 2024. Officer Soulia testified that, at that time, he had received two weeks of in-class training and one hundred hours of field training. He attended the full-time police academy the following year.

At the time relevant to the pending motion, Officer Soulia had not received any formal training on drafting search warrants. He, however, had applied for and obtained more than three search warrants, both at PPD and RCSD, and his work had been reviewed by a supervisor.

As a Level Two certified law enforcement officer, Officer Soulia was authorized to investigate misdemeanors and some felonies.[2] He was also certified in DUIs with death resulting and advanced roadside impairment detection enforcement. Officer Soulia testified that, pursuant to his training, he recognized the following symptoms as indicative of impairment: slurred speech, an inability to stand or sit upright, change in pupil size, and non-responsiveness.

### B. The Events of September 7, 2024.

On September 7, 2024, Officer Soulia responded to a one-car automobile crash on U.S. Route 7 in the area of Furnace Road. The incident involved a black Lincoln MKS which had struck a stationary vehicle and then a utility pole, deploying both front airbags.

When Officer Soulia arrived on scene, a volunteer firefighter informed him that the driver of the vehicle was "being belligerent, won't get away from the vehicle, pretty

---

videotape, rather than the parties' description of the events, where "[t]he videotape quite clearly contradict[ed] the version of the story told by respondent").

[2] 20 V.S.A. § 2358(b)(2)(B) limits Part-Time Patrol Officers' "scope of practice" to investigating only listed criminal violations, including weapons and drug paraphernalia offenses. *See* 20 V.S.A. § 2358(b)(2)(B)(i)(XX), (XXX).

sure he's intoxicated." (Doc. 27-2 at 0:58.) Upon exiting his police cruiser, Officer Soulia encountered a shirtless male smoking a cigarette and asked him what happened. The individual stated: "I just got [the vehicle]," and it "drives f**king weird." (Doc. 27-2 at 1:54.) Officer Soulia identified Defendant after requesting and viewing his driver's license. Defendant stated he was driving from a friend's residence in Rutland, Vermont, to his girlfriend's residence in Brandon, Vermont. He denied having consumed any alcohol or drugs that day.

Officer Soulia "ran" Defendant's driver's license and received a "Title 18"[3] alert code which indicated Defendant was a user of illegal drugs. He also recognized Defendant from a prior law enforcement encounter in which Defendant was in a vehicle with a group of individuals and suspected narcotics were seized from one of Defendant's companions. The vehicle stop took place in a known drug area, and the operator of the vehicle was required to submit to field sobriety exercises.

Approximately fifteen minutes later, Officer Soulia approached the owner of the parked vehicle involved in the incident and talked to her neighbors. He asked if they had seen Defendant driving and requested camera footage. No one reported seeing the crash, although one person said they heard it. Officer Soulia commented that he saw no signs of impairment in Defendant.

Thereafter, Officer Soulia began to write Defendant civil traffic tickets for multiple infractions. As he was filling out the paperwork, a second officer approached him and asked whether he was going to "screen" Defendant. Officer Soulia responded: "I'm not seeing any signs of impairment." (Doc. 27-2 at 25:56.) He also stated: "[Defendant] says that he doesn't do drugs, but I've dealt with him before and, you know, there was drugs in the vehicle." *Id.* at 25:59.

After approximately thirty minutes on the scene, Pittsford Fire Department officers informed Officer Soulia that Defendant was nodding off while sitting on a bench. The video depicts Defendant nodding off multiple times. At one point, his head is on his

---

[3] Vermont's health statutes governing narcotics are located in Title 18 of the Vermont Statutes Annotated.

3

lap and he is close to falling onto the ground. Officer Soulia quickly turned to Defendant and shouted "Yo!" Defendant sat back up and Officer Soulia approached him and stated: "Time to be real, what did you take today?" Defendant denied having taken any drugs and told Officer Soulia he was just tired. Officer Soulia remarked: "After an incident like this, I don't think you'd be too tired, you'd be wide awake." *Id.* at 28:39. He informed Defendant he was aware that he used drugs, and Defendant admitted to having consumed drugs "days ago" but denied having used any on that day. Defendant refused to perform standard field sobriety tests ("SFSTs"). At that point, Officer Soulia placed Defendant under arrest.

Officer Soulia searched Defendant's person and recovered a lighter, a cigarette pack, a plastic tube with residue, and rolled currency. He also found a wallet to which Defendant denied consent for a search. After Officer Soulia placed Defendant in the passenger seat of Officer Stephane M. Goulet's police cruiser, he proceeded to check the area around Defendant's vehicle. As he approached the vehicle, he observed a piece of tinfoil in the center console with brown burnt residue. He found another such piece of tinfoil on the ground outside the driver's side door. Officer Soulia credibly testified that he knew at the time that tinfoil was used to heat up illegal narcotics such as heroin and fentanyl.

Defendant was transported to the VSP Rutland Barracks for processing. Officer Soulia requested a Drug Recognition Expert ("DRE") to conduct an evaluation of Defendant, which Defendant refused. Officer Soulia additionally requested Defendant's consent to obtain a blood sample which Defendant also refused.

C.   **The Search Warrants.**

Officer Soulia sought and obtained two search warrants: (1) a warrant to search Defendant's vehicle and wallet for evidence of illegal narcotics (the "Vehicle Warrant"), and (2) a warrant to obtain a blood sample from Defendant sufficient to test for alcohol and/or drugs (the "Blood Sample Warrant"). In drafting the affidavits in support of the search warrants, Officer Soulia did not include his initial observations of non-impairment

and his statements to that effect because his subsequent investigation revealed signs of impairment.[4]

    In support of the Vehicle Warrant, Officer Soulia averred:

> [] During the investigation into the crash, signs of drug impairment were detected. The Defendant refused to perform [SFSTs] and was taken into custody without incident on suspicion of Driving Under the Influence – Drugs. During search incident to arrest, I located a plastic tube with residue inside of the tube. I know based on my training and experience, plastic tubes are commonly used to ingest illegal narcotics such as cocaine. I also located the Defendant's wallet and requested consent to open the wallet, the Defendant refused.
>
> [] After the Defendant was placed inside of the cruiser, I checked around the vehicle to continue my investigation. I observed a piece of tinfoil in the center console with burnt brown residue consistent to that of [h]eroin along with [a chore ]boy. I know these are commonly used to assist in the use of illegal narcotics. I also located another piece of tinfoil with burnt brown residue outside of the vehicle on the ground at the driver's side door, where I observed the Defendant when I arrived on the scene.

(Doc. 23-1 at 3, ¶¶ 2-3.)

    To establish probable cause for the Blood Sample Warrant, Officer Soulia averred:

> [] I observed a slight odor of intoxicants when the Defendant was taken into custody. I observed the male to be "nodding off" which I know is a symptom of drug impairment. The Defendant provided a [preliminary breath test ("PBT")] of 0.038% [blood alcohol content ("BAC")] while at the Vermont State Police Rutland Barracks. The PBT of 0.038% BAC is not consistent to that of my observations of the Defendant's impairment.
>
> [] I did not administer the Standardized Field Sobriety Tests because: the Defendant refused to perform [SFSTs]. I requested a [DRE] to respond based upon my observation of the Defendant. Sgt. Neary with the Vermont State Police met officer and the Defendant at the Vermont State Police Rutland Barracks. Sgt. Neary asked the Defendant if he would be willing to perform a drug impairment evaluation to which the Defendant refused.

(Doc. 23-2 at 3, ¶¶ 3a, b.)

---

[4] Officer Soulia credibly testified: "It never crossed my mind to include that at, the beginning of the investigation, I didn't see any signs of impairment."

Law enforcement executed the Vehicle and Blood Sample Warrants and discovered incriminating evidence which Defendant now seeks to suppress.

### D.   The July 9, 2024 Letter.

On July 7, 2025, the government disclosed a letter sent to Officer Soulia by the Vermont Criminal Justice Counsel ("VCJC"). The letter was dated July 9, 2024 (the "July 9 letter"), ten weeks prior to the incident involving Defendant.

In relevant part, the letter states:

> The [VCJC], Professional Regulation Subcommittee reviewed the materials supplied to it as part of the Rutland County Sheriff's Department internal investigation conducted pursuant to 20 V.S.A. § 2404. The materials were reviewed by the subcommittee on May 2, 2024. Based on that investigation, the Subcommittee determined that you committed Category B conduct (first offense) as defined by 20 V.S.A. § 2401(2) by the Rutland County Sheriff's Department policy on or about January of 2024 in violation of: Rutland County Sheriff's Department policies Chapter 2 section 1 Rules of Conduct B1, Obey all rules, regulations, directives and orders and Chapter 2 section 1 Rules of Conduct B7, making false statements or misrepresentations.
>
> * * *
>
> Your agency provided you with an opportunity to rebut a presumption that it had already made—that your time sheet errors were not a series of mistakes but rather a lack of honesty. When you resigned two shifts later, without evidence of improvement to rebut your agency's initial findings, your agency followed through on its initial decision that your behavior violated departmental policies.
>
> The Subcommittee <u>did not</u> find that your misstatements on your timesheets were for personal gain.

(Doc. 33-4 at 2-3) (emphasis in original). Officer Soulia did not disclose the July 9 letter to the judges who reviewed the Vehicle and Blood Sample Warrant applications. He testified that no Vermont State's Attorney's Office has been unwilling to work with him as a result of the letter.

Officer Soulia described the factual basis for the July 9 letter as his failure to record what time he arrived at and left certain communities within the RCSD's jurisdiction. He testified that he was not told of the investigation until after he had

6

accepted a position at the PPD and that, other than the July 9 letter itself, he received no discipline for the violation contained therein. Officer Soulia did not appeal RCSD's disciplinary action to the Vermont Supreme Court. He, however, disagrees with the July 9 letter and subsequently made sure he recorded the start and departure time the moment he arrived and departed from a relevant location.

Defendant has subpoenaed the documents underlying the July 9 letter from the VCJC and RCSD. In response, the VCJC filed a motion to quash the subpoenas, contending the records are confidential under Vermont law.[5] See Doc. 44.

## II.   Conclusions of Law and Analysis.

### A.   Whether the Collective Knowledge Doctrine Applies.

Pursuant to the collective knowledge doctrine, "an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001). The doctrine exists because, "in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his [or her] authority to arrest a suspect is based on facts known only to his [or her] superiors or associates." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (internal quotation marks omitted); *see also Williams v. United States*, 308 F.2d 326, 327 (D.C. Cir. 1962) ("The whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be circumscribed by the scope of his [or her] first[hand] knowledge of facts concerning a crime or alleged crime."). Some courts have noted that "some amount of communication between officers is necessary in order for a second officer's reliance on the first officer's knowledge to be

---

[5] "The [VCJC], its hearing officer, and [VCJC] staff shall keep confidential any other information regarding unprofessional conduct complaints, investigations, proceedings, and related records except the information required or permitted to be released under this section." 20 V.S.A. § 2409(d).

7

reasonable." *Wong v. Yoo*, 649 F. Supp. 2d 34, 60 n.11 (E.D.N.Y. 2009); *see also United States v. Williams*, 2014 WL 412526, at *7 (D. Vt. Feb. 3, 2014) (citing *Wong*, 649 F. Supp. 2d at 60 n.11).

Defendant argues that the collective knowledge doctrine does not apply in this case for three reasons: (1) there is no evidence that the firefighters Officer Soulia spoke to had sufficient information to justify Defendant's arrest; (2) even if there was sufficient evidence regarding the firefighters' observations, they are not officers with the "training, responsibility[,] or authority to make a determination of [probable cause]" (Doc. 39 at 5) (internal quotation marks omitted) (quoting *Colon*, 250 F.3d at 137); and (3) the government does not contend Officer Soulia was directed to arrest Defendant by another law enforcement officer who had facts supporting probable cause.

> Applying the collective knowledge doctrine, the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably, and in a chain of communication between officers, responsibility for the accuracy of probable cause remains with the officer that provided the affirmation, not the arresting officer.

*Cain v. Cnty. of Niagara, N.Y.*, 2022 WL 2134288, at *9 (W.D.N.Y. June 14, 2022) (internal quotation marks omitted) (quoting *Colon v. City of New York*, 2014 WL 1338730, at *5 (E.D.N.Y Apr. 2, 2014)).

When Officer Soulia arrived on the scene, a volunteer firefighter stated: "[Defendant is] being belligerent, won't get away from the vehicle, pretty sure he's intoxicated." (Doc. 27 at 1.) The government also relies on an affidavit by Officer Goulet, which it attached to its opposition to Defendant's motion,[6] wherein he stated that "[o]n arrival to the crash, . . . I could see . . . Defendant[] sitting on the front step of the former Poros Pizza. Defendant seemed a little agitated and his eyes were closing like he was about to fall asleep." (Doc. 27-4 at 7, ¶ 2.) The video does not depict Officer Goulet

---

[6] Defendant argues that, because Officer Goulet's affidavit was not admitted in evidence during the evidentiary hearing, it may not be considered. The court reviewed the Goulet affidavit in preparation for its evidentiary hearing. Any failure to move to admit it as evidence was therefore an oversight by the government that the court will excuse.

8

informing Officer Soulia of his observations, but it does show him asking Officer Soulia whether he is going to screen Defendant for impairment.

As Officer Soulia was writing Defendant tickets, Officer Goulet approached him to discuss some photographs he took of the scene of the crash. Officer Goulet affirmed that at that time:

> [A] member of the Pittsford Fire Department came over and advised us that Defendant was slumping over and almost falling over onto the ground. Officer Soulia and [Officer Goulet] observed [] Defendant [] nod off and almost fall over onto the ground. At one point, Defendant slumped over and fell forward and caught himself with his hands before he hit the ground. When Defendant lifted himself back onto where he was sitting his coordination was slow and erratic.

*Id.*

The video of the incident corroborates the accuracy of the firefighters' statements and Officer Soulia's observations. In such circumstances, "[i]t is not unreasonable for police officers to rely on the accounts provided by other officers at the scene, even when confronted with conflicting accounts." *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir. 2000); *see also Cain*, 2022 WL 2134288, at *9 (finding that the collective knowledge doctrine applied where there was no evidence "of any coercion or falsity in the [affirming officers'] statement to undermine the reasonableness of arresting or further detaining Plaintiff[]"). Even in the absence of the collective knowledge doctrine, Officer Soulia was entitled to rely on Officer Goulet's inquiry at the scene regarding screening Defendant for impairment as well as the firefighters' observations because a law enforcement officer is entitled to rely on eyewitness accounts in determining probable cause. *See Peterson-Hagendorf v. City of New York*, 146 F. Supp. 3d 483, 486 (E.D.N.Y. Nov. 30, 2015) ("As long as circumstances surrounding the event at issue suggest trustworthiness, probable cause can be established . . . by innocent bystanders who witnessed the crime[.]") (citing *Blythe v. City of New York*, 963 F. Supp. 2d 158, 182 (E.D.N.Y. 2013)).

B.  **Whether the Court Should Grant Defendant's Fourth Amendment Motion to Suppress.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. It also provides that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

Defendant challenges the credibility of Officer Soulia's assertion that he saw signs of impairment before Defendant's arrest and contends that his arrest was "plainly illegal" and that evidence obtained as a fruit of the arrest must suppressed. (Doc. 23 at 5.)

"A warrantless arrest is unreasonable unless the arresting officer has probable cause to believe that a crime is being committed." *United States v. Homer*, 715 F. Supp. 3d 413, 415 (E.D.N.Y. 2024) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

> To determine the existence of probable cause, a court considers the totality of the circumstances based on a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest. The court considers those facts available to the officer at the time of the arrest and immediately before it. The significance of each of these factors may be enhanced or diminished by surrounding circumstances.

*Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (citations and internal quotation marks omitted). "The government has the burden to demonstrate that its agents had probable cause to justify a warrantless arrest." *Homer*, 715 F. Supp. 3d at 415 (citing *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008)).

At the time of Defendant's arrest, Officer Soulia had knowledge that Defendant was flagged as a drug user in a database containing his driver's license information.

10

Defendant had denied he was under the influence but admitted to using drugs as recently as a couple days prior to his colliding with a parked car and a utility pole at a speed that deployed his vehicle's airbags. The only explanation Defendant provided for the accident was that his vehicle "drives f\*\*king weird." (Doc. 27-2 at 1:54.) Officer Soulia personally observed Defendant nodding off while sitting on a bench after being involved in a serious accident, and Officer Goulet observed him to be "slow and erratic" as he got up. (Doc. 27-4 at 7, ¶ 2.) Officer Soulia received reports from firefighters on the scene that Defendant was belligerent and appeared to be intoxicated.

Considering the totality of the circumstances, the government has established that Officer Soulia had "knowledge [and] reasonably trustworthy information . . . sufficient to warrant a person of reasonable caution in the belief" that Defendant was under the influence at the time of the accident.[7] *Stansbury*, 721 F.3d at 89 (citation omitted). Defendant's arrest was therefore lawful under the Fourth Amendment.

### 1.   Whether the Search of Defendant Incident to Arrest was Lawful.

Defendant further challenges the search of his person as a fruit of his allegedly unlawful arrest. The Supreme Court has long recognized "the right on the part of the [g]overnment . . . to search the person of [an arrestee] when legally arrested to discover and seize the fruits or evidences of crime." *Riley v. California*, 573 U.S. 373, 382 (2014) (internal quotation marks omitted) (quoting *Weeks v. United States*, 232 U.S. 383, 392 (1914)). A search incident to arrest is reasonable even where "there [i]s no concern about the loss of evidence," or where "the arresting officer ha[s] no specific concern that [the arrestee] might be armed." *Id.* at 384 (citing *United States v. Robinson*, 414 U.S. 218, 236 (1973)). The scope of such a search, however, is "limited to 'personal property . . . immediately associated with the person of the arrestee.'" *Id.* (quoting *United States v.*

---

[7] Under Vermont law, it is a crime for a person to "operate, attempt to operate, or be in actual physical control of any vehicle on a highway[] when the person is under the influence of any other drug or under the combined influence of alcohol and any other drug." 23 V.S.A. § 1201(a)(3).

11

*Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds by, California v. Acevedo*, 500 U.S. 565 (1991)).

After Officer Soulia arrested Defendant, he proceeded to conduct a search of his person and recovered a plastic tube with some residue, rolled-up currency, and a wallet, among other personal effects. Although Officer Soulia sought a warrant to search the wallet, he was entitled to conduct a warrantless search of it as part of the search incident to arrest. *See, e.g., Robinson*, 414 U.S. at 236 ("Having in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct.") (citations omitted); *see also United States v. Brito*, 771 F. Supp. 3d 157, 175 (E.D.N.Y. 2025) (collecting cases in the Second Circuit "concluding that warrantless searches of closed containers were properly undertaken incident to a defendant's arrest" whenever "the object searched was within the defendant's immediate control at the time of his arrest[]") (citations and internal quotation marks omitted). Because Defendant's arrest was lawful, a search of his person incident to that arrest was also lawful.

### 2. Whether the Automobile Exception to the Warrant Requirement Applies.

The government argues that, although Officer Soulia obtained the Vehicle Warrant to search Defendant's vehicle, it was not necessary to do so because the automobile exception applies. "Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *Soukaneh v. Andrzejewski*, 112 F.4th 107, 127 (2d Cir. 2024) (internal quotation marks omitted) (quoting *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004)).

The scope of such a warrantless search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* (internal quotation marks omitted) (quoting *Acevedo*, 500 U.S. at 579-80). "Probable cause exists where the facts and circumstances within . . . the officers' knowledge and of which they

had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Gaskin*, 364 F.3d at 456-57).

Regarding the first element, the Second Circuit has explained that:

> [T]he mobility rationale articulated in *Carroll*[ *v. United States*, 267 U.S. 132 (1925)] does not turn on case-by-case determinations by agents in the field regarding either the probability that a vehicle could be mobilized or the speed with which movement could be achieved. Rather, "whether a vehicle is 'readily mobile' within the meaning of the automobile exception has more to do with *the inherent mobility of the vehicle* than with the potential for the vehicle to be moved from the jurisdiction, thereby precluding a search." [*United States v.*] *Howard*, 489 F.3d [484,] 493 [(2d Cir. 2007)].

*United States v. Navas*, 597 F.3d 492, 498 (2d Cir. 2010) (alteration adopted) (emphasis in original). The fact that Defendant's vehicle was damaged in the accident and possibly inoperable is therefore irrelevant.

Turning to the second element, Officer Soulia initially asserted he did not believe Defendant was impaired. After spending over thirty minutes on the scene of the accident, however, he concluded that Defendant was impaired and developed probable cause to arrest him. After Defendant's arrest, Officer Soulia observed in plain view a piece of tinfoil with burnt brown residue inside the vehicle and another such piece of tinfoil on the ground next to the driver's side door.[8] In light of his training and experience, he immediately recognized this as evidence of drug paraphernalia and of potential recent opiate use.

The facts and circumstances before Officer Soulia were "sufficient in themselves to warrant a person of reasonable caution in the belief that evidence of a crime will be

---

[8] *See United States v. Mejia*, 2025 WL 934343, at *5 (S.D.N.Y. Mar. 27, 2025) ("[A] law enforcement officer may seize evidence without a warrant if (1) the officer is lawfully in a position from which [he or she] views an object, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object.") (internal quotation marks omitted) (quoting *United States v. Babilonia*, 854 F.3d 163, 179-80 (2d Cir. 2017)).

found in the place to be searched." *Babilonia*, 854 F.3d at 178 (citation omitted). Officer Soulia was therefore entitled to search the passenger compartment of the vehicle without a warrant pursuant to the automobile exception.

### C.   Whether Defendant is Entitled to a *Franks* Hearing.

Defendant asserts that the Vehicle and Blood Sample Warrants omit the fact that the VCJC determined that, while Officer Soulia worked at RCSD, he "committed Category B conduct . . . by making false statements or misrepresentations" on his time sheets. (Doc. 39 at 1) (citation and internal quotation marks omitted). Defendant claims Officer Soulia's material omissions include failing to include facts that demonstrate he twice stated he observed no signs of Defendant's impairment. Defendant argues that such omissions were material and could not have been inadvertent. The government counters that no *Franks* hearing is required because Defendant does not contest the facts, which the government claims are undisputed, and because Defendant has failed to demonstrate that the alleged omission was intentional, deliberate, or material. The facts *are* contested, however, because Defendant contests Officer Soulia's claim that he was impaired.

"Although 'a search or seizure pursuant to a warrant is presumed valid,' a defendant may 'in certain circumstances, . . . challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure.'" *United States v. Ayala*, 740 F. Supp. 3d 314, 339 (S.D.N.Y. 2024) (quoting *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003)). "One such circumstance is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." *United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).

> To be entitled to a *Franks* hearing, a defendant must make "a substantial preliminary showing" of (1) falsity, "that a false statement . . . was included by the affiant in the warrant affidavit," (2) knowledge, that the affiant made the allegedly false statement "knowingly and intentionally, or with reckless disregard for the truth," and (3) materiality, that "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56; *see United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021).

> A defendant's obligation to prove these elements is well established in this Circuit. *See McKenzie*, 13 F.4th at 236.
>
> With respect to knowledge, "allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

*United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (alteration adopted).

> Where omissions are concerned, recklessness may be inferred "where the omitted information was 'clearly critical' to the probable cause determination." However, such an inference is "not to be automatically drawn simply because a reasonable person would have included the omitted information, and the inference is particularly inappropriate where the government comes forward with evidence indicating that the omission resulted from nothing more than negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary to the warrant application."

*United States v. Nejad*, 436 F. Supp. 3d 707, 719 (S.D.N.Y. 2020) (alteration adopted) (citation omitted) (quoting *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *Rajaratnam*, 719 F.3d at 154-55).

Defendant argues that the omission of the VCJC's determination of Officer Soulia's "false statements or misrepresentations[,]" (Doc. 39 at 1), was material to the probable cause determination because it directly affects the affiant's credibility. The court agrees the July 9 letter negatively impacts Officer Soulia's credibility, but disagrees that its omission defeats the existence of probable cause.

Officer Soulia's false statements were related to a time sheet reporting issue and "were [not] for personal gain." (Doc. 33-1 at 3.) Officer Soulia credibly testified that he received no other discipline and that Vermont State's Attorney's Offices have been willing to work with him after the letter issued. Defendant has provided no authority for a conclusion that Officer Soulia was required by law to disclose that letter in a search warrant application. The court thus does not find the omission of the July 9 letter in the search warrant affidavits material as it does not impact the reliability of the statements contained therein.

To the extent Defendant argues that the only evidence supporting the probable cause determination for both search warrants is Officer Soulia's observation of Defendant

15

nodding off, this does not accurately reflect the totality of the circumstances. The nature of the accident itself gave rise to a reasonable concern regarding the operator's impairment. Defendant's only explanation for the crash was to claim the vehicle was new to him and "drives f**king weird." Firefighters on the scene alerted Officer Soulia to Defendant's belligerence and their belief that he was intoxicated. Defendant was flagged as a known drug user in a database, and Officer Soulia had previously encountered Defendant in the company of a person in possession of illegal drugs. Officer Goulet inquired whether Defendant would be screened for impairment. Officer Soulia witnessed Defendant nodding off after another firefighter alerted him to Defendant's condition. Officer Soulia reasonably characterized Defendant's ability to fall asleep after a major car accident as an atypical reaction. He was also entitled to rely on Defendant's repeated refusals to allow law enforcement to determine whether he was impaired.

Against the foregoing backdrop, Officer Soulia's omission from the warrant affidavits of his initial impressions regarding Defendant's state of intoxication was not "'clearly critical' to the probable cause determination." *Nejad*, 426 F. Supp. 3d at 719 (citations omitted). Likewise, his failure to reference an unrelated disciplinary letter did not materially undercut his credibility as his statements regarding Defendant's condition were corroborated by other observers and by physical evidence.

"To determine the materiality of alleged misstatements, courts 'correct' the warrant affidavit and determine whether the affidavit, so corrected, establishes probable cause. If probable cause remains, the misstatements are immaterial, and suppression is unnecessary. If it does not, the misstatements were material[.]" *United States v. Lauria*, 70 F.4th 106, 125 (2d Cir. 2023) (citing *United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997)). In this case, "corrected" affidavits would not alter the determination of probable cause.

For the reasons stated above, the court DENIES Defendant's motion for suppression pursuant to *Franks*.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion to suppress (Doc. 23), and DENIES Defendant's motion for a *Franks* hearing beyond the July 10 evidentiary hearing. *Id.*

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 11th day of August, 2025.

Christina Reiss, Chief Judge
United States District Court